# IN THE OREGON TAX COURT
## REGULAR DIVISION
### Property Tax

DAVID JOHN MEDNANSKY,    )
            )
    Plaintiff,    ) **TC 5465**
  v.          )
            )
DEPARTMENT OF REVENUE,   )
State of Oregon,      )
            )
    Defendant,   )
            )
  and        )
            )
CURRY COUNTY ASSESSOR,   ) **ORDER DENYING PLAINTIFF'S**
            ) **SECOND MOTION TO DISQUALIFY**
    Defendant-Intervenor. ) **JUDGE MANICKE**

This matter comes before the court on a letter to the court filed by Plaintiff on January 29, 2026, at 10:27 a.m. (Morning Letter).[1] A caption in the letter begins: "Complaint and notice of, Extrajudicial Interference, Extrajudicial Bias * * *."[2] It states that its purpose is to "inform the Court, on record, of improper conduct by the Court" that has caused the case to be "contaminated with bias from an extrajudicial source[, such that] he believes he cannot have a fair trial in this case." (Morning Letter at 3.) In the afternoon of January 29, 2026, at 1:38 p.m., Plaintiff filed an additional letter (Afternoon Letter), which informed the court that he "cannot attend trial."

---

[1] The January 29 Morning Letter states that it is a corrected version of a similar letter that Plaintiff filed on January 27, 2026.

[2] The full caption reads: "Complaint and notice of, Extrajudicial Interference, Extrajudicial Bias, Judicial Misconduct, Political and Coercive Misconduct, Violation of the Oregon Code of Judicial Conduct, Unethical Conduct of Court Administrator, Court Administrator Acted unlawfully to Influence Defendant's by intentionally informing Defendants of Plaintiff's personal views concerning social, political agenda concerning DEI and the homosexuality that the statement Pronouns mater represent, and Plaintiff's dislike to have such indoctrination put upon him by emails from Rocco Lieuallen, Court Administrator."

ORDER DENYING PLAINTIFF'S SECOND
MOTION FOR DISQUALIFICATION OF
JUDGE MANICKE  TC 5465

Like the Morning Letter, the Afternoon Letter states Plaintiff's view that "this case is in fact contaminated with a bias from extrajudicial intervention and that the Court, Judge Manicke, is guilty of judicial misconduct and has committed wrongful interference with my complaint." Neither the Morning Letter nor the Afternoon Letter requests relief. This order treats the Morning Letter, along with the allegations of bias in the Afternoon Letter, as Plaintiff's second motion to disqualify this judge. (*Cf.* Plaintiff's Motion and Affidavit to Disqualify Judge Robert T. Manicke (July 30, 2024); Order Denying Plaintiff's Motion to Disqualify Judge Robert. T. Manicke; *Mednansky v. Dept. of Rev.*, ___OTR___ (Aug 27, 2024); 2024 WL 3964335 (August 2024 Order).)

The relevant statutory and constitutional standards for disqualification are set out in the court's August 2024 Order and have not changed. The first statutory basis--disqualification "for prejudice" by affidavit under ORS 14.250--does not apply to the Tax Court.[3] *See Mednansky*, ___OTR at ___ (slip op at 3-4); 2024 WL 3964335 at *2. The only other potential statutory basis--disqualification "for cause" under ORS 14.210--requires one of the circumstances in ORS 14.210(1) to be present. (*See id.* at 4-6.) However, Plaintiff does not allege any such circumstance; therefore, disqualification under ORS 14.210 is not appropriate.

Having concluded that no statutory grounds support disqualification, the court next considers whether any constitutional grounds require disqualification. Plaintiff's letters allege violation of his "due process" rights. (*See, e.g.,* Morning Letter at 3 ("If you conduct the trial without my presence I believe you will have deprived me of my constitutional right of due

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2023 edition.

process.").)  The court's August 2024 Order describes the due process standard in a judicial disqualification case:

> "Due Process requires '[a] fair trial in a fair tribunal * * *.' *Id.*  To be disqualifying on procedural due process grounds, the judge's alleged bias and prejudice 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'

*Mednansky*, ___OTR at ___ (slip op at 6) (quoting *Hanson v. Dept. of Rev.*, 294 Or 23, 28, 653 P2d 964 (1982).); 2024 WL 3964335 at *3.  The order concludes:

> "Plaintiff has not alleged any bias or prejudice stemming from any extrajudicial source unrelated to TC 5465, therefore, Plaintiff's motion to disqualify does not meet the standard for disqualification under the Due Process Clause."

*Id.* at 6-7.

The court first addresses three instances of "extrajudicial bias" alleged in the Morning Letter:  (1) statements by counsel for Defendant-Intervenor (the County) regarding which pronouns should apply to Plaintiff and alleging the County's "retaliation" against Plaintiff by seeking to require a law enforcement officer to attend the appraisal of Plaintiff's property; (2) statements by Defendant's counsel "demanding" that "lethal force" be present at the appraisal and "threaten[ing]" to file a motion for sanctions; and (3) actions of court staff in handling Plaintiff's *ex parte* communications about whether Plaintiff could participate in trial by remote means.  (Morning Letter at 2-3.)  The court concludes that these allegations are based on a flawed understanding of the term "extrajudicial source."  Bias from an extrajudicial source refers to information the judge learns from sources other than the litigation; statements or conduct by a litigant or court personnel that come to the judge's attention through the litigation are not evidence of "extrajudicial bias," even if the statements or conduct might be considered "extrajudicial" in the sense that they come from someone other than the judge.

ORDER DENYING PLAINTIFF'S SECOND
MOTION FOR DISQUALIFICATION OF
JUDGE MANICKE  TC 5465

The Morning Letter also alleges that "the Court has introduced a bias into the case that originates with something having nothing to do with the case itself." (Morning Letter at 1.) Plaintiff refers to the court's distribution to the County and Defendant of a January 10, 2025, email that Plaintiff sent to the court without copying the other parties. Plaintiff's email objected to the court administrator's use of an email signature that listed his pronouns and gave a link to a website entitled "why pronouns matter." Plaintiff's email included the statement: "I do not believe I can have a fair trial in this case considering I have been compelled to point out to the Court I do not want its agenda pushed on me." On January 13, 2025, the court sent a letter to all parties that reprinted the text of Plaintiff's email. *See* Court's Ltr, Jan 13, 2025. Contrary to Plaintiff's assertion, the court sees nothing about the court's communication to the defendants in this case that "introduced a bias into the case." The court took Plaintiff's January 10, 2025, statement that he did not believe he could have a fair trial as at least potentially having a "bearing on the merits" of the case and thus as appropriate for disclosure under section 3.9 of the Code of Judicial Conduct. Plaintiff's statement became part of the court's record when the court received it; therefore, its source is not "extrajudicial." Nor is the court aware of any law prohibiting disclosure of it to the other parties.

In addition, the Morning Letter alleges that a statement by counsel for the County during a December 19, 2025, hearing implies that the County must have had *ex parte* communications with the judge. (Morning Letter at 2 ("The moment Plaintiff uttered the word 'violence' Intervenor Boyer, speaking to Judge Manicke stated, 'see what I mean'. The conversation with Judge Manicke, up to this point, had no discussion about violence, nor was the word used before. Plaintiff states Intervenor Boyer's statement indicates prior, ex parte communication with Judge

Manicke concerning attributes related to Plaintiff.").) Plaintiff offers no evidence that an *ex parte* communication occurred, and the court is aware of none. While *ex parte* communications could, in some circumstances, undermine a litigant's due process rights, the court rejects Plaintiff's allegation as purely speculative.[4]

The Afternoon Letter alleges that the court "violated my constitutional right to privacy." (Afternoon Letter at 1.) Plaintiff apparently refers to the court's January 20, 2026, order related to Plaintiff's attempt to show cause as to why he should be allowed to appear by remote means due to financial hardship. One component of that order denied his request but allowed him leave to submit further substantiation by completing the means-testing form used by the court in income tax cases. *Mednansky*, ___OTR ___ (Jan 20, 2026) (slip op at 4-6.)[5] Plaintiff does not

---

[4] The court is unable to find any instance in which counsel for the County said, "See what I mean?" In a hearing on December 19, 2025, the following exchange occurred:

> Judge: I'm going to ask you again Mr. Mednansky if you intend to restrict the appraiser's access to any part of your land during the appraisal?
>
> Mednansky: Well, yes, of course, the house as you said. I will say it again, if they act in an untowards way I will invoke my right to revoke their permission to come on if they ask in an improper way. If they act improperly, I will tell them to leave. It has to do with their actions.
>
> Judge: Ms. Boyer, do you have anything to add here?
>
> Boyer: "Your honor, this is precisely the reason for requesting that law enforcement be present in order to ensure that there is an impartial witness who can ensure that the process goes smoothly. It is not unexpected that the plaintiff has taken this position, and what we do not want to do is to set an inspection, send the county's appraiser out there, and then the plaintiff denies access, and we're involved in a factual dispute before this court about who acted untoward or not. The reality is the real market value is at issue, the county's appraiser will be in and out of there in less than half an hour, this is precisely why we asked in the alternative for a motion to dismiss your honor."

(Statements of Plaintiff David Mednansky and Defendant-Intervenor counsel Audrey Boyer, Hearing Def's Mot Compel, Dec 19, 2025, 2:16-2:19.)

[5] As an alternative, the January 20, 2026, order would have allowed Plaintiff to participate by remote means if he were to confirm by declaration his prior written statements that he did not intend to present testimony or cross-examine witnesses at trial. (*See id.* at 5-6.) To the extent that Plaintiff alleges that this component of the January 20, 2026, order violates his due process rights, the court rejects his contention because there is no evidence of bias from an extrajudicial source.

ORDER DENYING PLAINTIFF'S SECOND
MOTION FOR DISQUALIFICATION OF
JUDGE MANICKE  TC 5465

elaborate on how this substantiation requirement would violate his privacy rights, nor did he seek a protective order to address any such concerns. *See* Tax Court Rule (TCR) 36 C. To the extent that Plaintiff's allegation of a privacy violation arises under principles of procedural due process, the court rejects it for lack of evidence of bias from an extrajudicial source, as discussed above. To the extent that Plaintiff's allegation arises from another constitutional concern, the court rejects it as unfounded.

Plaintiff's Morning and Afternoon Letters of January 29, 2026, do not support any finding of prejudice or bias of the judge stemming from an extrajudicial source. Now therefore,

IT IS ORDERED that Plaintiff's second motion to disqualify this judge is denied.

Dated this 3rd day of February, 2026.

2/3/2026 9:26:11 AM

Judge Robert T. Manicke

ORDER DENYING PLAINTIFF'S SECOND
MOTION FOR DISQUALIFICATION OF
JUDGE MANICKE  TC 5465